The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jan Pittman. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
All stipulations contained in the aforementioned Pre-Trial Agreement are incorporated herein by reference as is the record of Dr. Langley received into evidence following the hearing as Stipulated Exhibit No. 1.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing in this matter, plaintiff was a forty-seven year old high school graduate who had been employed with defendant-employer since May 1991 after finishing high school being employed by defendant-employer in several capacities. Plaintiff was injured on June 8, 1990, as a result of an admittedly compensable work-related injury. At the time of her injury, plaintiff was employed as a presser of cuffs and collars wherein she would stand or sit before an ironing board, reach into a box for a bundle of 20 to 30 cuffs or collars, place one of those items on the ironing board, and using an iron that was suspended from a rod and a spring to hang one to one and a half inches above the ironing board, plaintiff would pull the iron and use the iron to press the collar or cuff.
2. Following her admittedly compensable injury by accident, plaintiff was initially treated by Dr. Venters, an orthopedic surgeon and was diagnosed in June of 1990 as having a herniated disc at the L5-S1 level. Plaintiff was treated conservatively and subsequently discharged by Dr. Venters in September 1990 to return to full-time work activities.
3. However, following her return to work in September 1990, plaintiff continued to experience back pain and; thereafter, returned to see Dr. Venters in March 1991 who referred plaintiff for MRI in May 1991 which revealed a small amount of bulging. Thereafter, Dr. Venters continued to treat plaintiff conservatively. Plaintiff returned to employment with defendant-employer; and as of September 11, 1991, Dr. Venters advised that no surgery was recommended at that time. However, as of February 1992, plaintiff was still complaining of back pain following a return visit to Dr. Venters and a repeat MRI revealed enlargement of the disc at the L5-S1 level; and surgery was recommended which was performed on April 23, 1992, consisting of a hemilaminectomy at the L5-S1 level with diskectomy. Plaintiff initially experienced good relief from said surgery; however, shortly thereafter plaintiff's back and leg pain returned, and she was diagnosed with post-laminectomy syndrome and chronic lumbar sacral strain which was again treated conservatively with physical therapy and anti-inflammatory medication.
4. Plaintiff was released from work activities while undergoing surgery and post-operative care from April 23, 1992, through October 6, 1992. As of October 6, 1992, plaintiff was released to return to part-time light duty for two weeks with a gradual increase to full-time duty. Plaintiff thereafter returned to work activities on October 19, 1992, at the reduced level and was then returned to regular duty between November 24, 1992 and January 19, 1993. As part of her release to return to work activity in 1992, defendant-employer was to provide plaintiff with stools so that she could sit or prop her leg while working and also allow plaintiff to take a break approximately every thirty minutes. As of January 19, 1993, plaintiff reported to Dr. Venters that she was working full-time, and she was discharged from his care.
5. Plaintiff returned to see Dr. Venters on the following occasions in 1993: April 5, April 15, May 4 and June 10, 1993. On April 5, 1993, plaintiff reported experiencing backache, leg weakness and tingling. Diagnosis remained post-laminectomy syndrome and chronic lumbar sacral strain. On May 4, 1993, plaintiff received injection therapy without relief. On June 10, 1993, plaintiff informed Dr. Venters that she was experiencing great difficulty carrying out her job duties. Because of plaintiff's continuing complaints, an MRI was performed which revealed mild scarring which would be consistent with plaintiff's continuing complaints of pain. Nevertheless, while plaintiff may occasionally be expected to miss a day or two from work due to her back condition, she remained capable of performing her full-time work duties within the restrictions set forth by Dr. Venters and was not further excused from work duties after January 1993.
6. As of July 1993, plaintiff had reached maximum medical improvement and sustained a twenty-five percent permanent partial disability to her spine as a result of the injury by accident giving rise hereto.
7. Upon plaintiff's return to work in October 1992, defendant-employer did attempt to provide plaintiff a stool as well as a box or stool to prop her foot upon and allowed her to shift positions and never required her to lift more than five pounds. However, on occasions, the stool would not be available upon which plaintiff could sit or prop her foot.
8. Plaintiff missed many work days following her return to work in October 1992. There were numerous days when plaintiff called defendant-employer to say she would be out of work because she was sick. However, plaintiff did not always indicate that these absences were due to her back condition nor did she provide defendant-employer with doctor's excuses which attributed said absences to plaintiff's back condition.
9. Between June 26, 1993, and August 1993, plaintiff was out of work as part of a general lay-off. Plaintiff did not return to work in August 1993 when the lay-off ended, rather plaintiff returned in September 1993 reporting that she had not returned in August because she was sick. However, plaintiff had not returned to Dr. Venters in August 1993. Also, upon her return to work in September 1993, plaintiff reported to defendant-employer that she was unable to work a full forty-hour week because of back pain. However, this is not substantiated by the medical evidence of record as plaintiff's treating physician, Dr. Venters, testified that plaintiff would be expected to have some days where she was not able to work an entire day because of her back condition, but her back condition would not prevent her from engaging in the light duty work afforded her by defendant-employer.
10. Plaintiff was laid off by defendant-employer on October 6, 1993, as part of a general lay-off. It was usual for defendant-employer to lay-off employees during the regular work year; but every year previously for the past twenty years, plaintiff had been called back following a lay-off. Plaintiff's October 6, 1993, lay-off slip indicated that plaintiff had poor attendance; however, it also indicated that plaintiff would be eligible for re-hire.
11. Following this lay-off, plaintiff applied for and received unemployment benefits.
12. In January 1994, defendant-employer was contacted by Cindy Sammons, the rehabilitation nurse, working with plaintiff, regarding whether or not there was a position available for plaintiff. Ms. Sammons was informed that there was not a position available with defendant-employer and then contacted plaintiff and so advised her.
13. Thereafter, plaintiff attempted to locate employment elsewhere but was unable to find employment within her capacity. Although defendant-employer began rehiring employees in February 1994, defendant-employer did not contact plaintiff or provide her with a position compatible with her physical restrictions and has presented no evidence that plaintiff could have obtained a job elsewhere within her physical capacity when considering plaintiff's age, education and work experience.
14. Plaintiff's loss of earnings after October 6, 1993, resulted from the admittedly compensable injury by accident giving rise to this claim.
15. While plaintiff has reached maximum medical improvement, she is entitled to further medical treatment consisting of evaluation at a Pain Clinic as recommended by Dr. Venters as said treatment tends to afford plaintiff relief.
* * * * * * * * * * *
Based on the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff is entitled to temporary total disability compensation benefits at the rate of $106.72 per week commencing October 7, 1993, and continuing barring a change of condition, a return to work or further order of the Industrial Commission as a result of the injury by accident plaintiff sustained on June 8, 1990, subject to a credit awarded defendants for unemployment compensation benefits received by plaintiff after October 6, 1993. N.C. GEN. STAT. § 97-29; N.C. GEN. STAT. § 97-42.1.
2. Plaintiff is entitled to have defendants provide all medical treatment arising from the injury by accident giving rise hereto including the evaluation at a Pain Clinic as recommended by Dr. Venters to the extent said treatment tends to effect a cure, give relief or lessen her disability. N.C. GEN. STAT. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff is entitled to compensation at the rate of $106.72 per week from October 7, 1993, and continuing subject to a change of condition, return to work or further order of the Industrial Commission for the temporary total disability she has sustained arising from this injury by accident, subject to a credit awarded defendants for unemployment benefits paid to plaintiff after October 6, 1993. That portion of this compensation which has accrued shall be paid in a lump sum, subject to an attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident.
3. An attorney's fee in the amount of twenty-five percent of the compensation awarded herein is hereby approved for plaintiff's counsel, the accrued portion of the fee shall be deducted from the accrued benefits, and thereafter, defendants shall forward every fourth check of compensation to plaintiff's counsel until plaintiff is no longer entitled to compensation benefits.
4. Defendants shall pay the costs.
FOR THE FULL COMMISSION
 S/ ______________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ______________________________ THOMAS J. BOLCH COMMISSIONER
S/ ______________________________ J. HOWARD BUNN, JR. CHAIRMAN
CMV/cnp/mj 1/16/96